AYRES, Judge.
This is an action for damages for a breach of contract. Pursuant to the development of the Pine Crest Manor Subdivision adjacent to the municipality of Waldo, Arkansas, plaintiff entered into a contract with W. W. Hale for the construction of the streets in accordance with plans and specifications prepared by Craft & Sanders, an engineering firm employed by plaintiff. Hale subcontracted the asphalt surfacing of the streets to Winford Company, Inc.
Claiming that the streets were defective in both materials and workmanship, and that soon after construction they deteriorated and crumbled, plaintiff sought to recover damages in these respects and in these amounts:
Costs to repair streets $11,000
Depreciated value of 40 lots at $500 each 20,000
Additional and future interest expense 6,760
$37,760
Made defendants were Hale, Hartford Accident and Indemnity Company, Hale’s insurer, Craft & Sanders, the firm’s individual partners, Sammie L. Craft and Doyle P. Sanders, and Winford Company, Inc. For a lack of privity between plaintiff and Winford, the latter was dismissed as a defendant but was brought back into the action as a third-party defendant at the instance of Hale and Hartford who, in the alternative, sought judgment over against Winford in the event they were condemned in damages, or, still further in the alterna *366 tive, they sought judgment against Win-ford by way of contribution for one-half of such award.
After trial there was judgment in plaintiff’s favor against the defendants Hale and Hartford for $11,000 with interest thereon at 5% per annum until paid, for cost of the repairs to the streets, and in favor of Hale and Hartford against Win-ford, m contribution, for one-half of the aforesaid sum. Plaintiff’s other demands were rejected as were the demands of Craft & Sanders and its individual partners, and the third-party demands of Win-ford against Craft & Sanders and its individual partners. From the judgment thus rendered and signed, Hale, Hartford, and Winford appealed.
As a preliminary matter, appellants complain that the municipality of Waldo, Arkansas, was an indispensable party in this proceeding and that the plaintiff, Howard Building Centre, was without interest or right to prosecute this action. These contentions are, in our opinion, without merit. The assertion that the municipality was an indispensable party is based on some vague verbal testimony to the effect that the streets of the subdivision had been dedicated to the municipality and that Howard, therefore, no longer had an interest inasmuch as it was the municipality’s obligation to maintain the streets.
The question of primary concern, factual in character, relates to the dereliction vel non of Hale and Winford in the performance of their contractual obligations in the construction and surfacing of the streets. As pointed out in a written opinion by the learned trial judge, the evidence, including the photographs of the streets, leaves little doubt that the streets in the subdivision, particularly those on the east end, rapidly deteriorated soon after their construction and surfacing. Although defendant Hale returned and reworked the streets, the same defective condition reappeared soon after the reworking operation.
Wayne E. Williamson, a civil engineer with many years’ experience in the construction and maintenance of streets and highways, inspected the streets in this subdivision on May 23, 1968, in the presence of defendant Hale, Zack Woodard and Johnny Kelly of the plaintiff company, and a representative of Barrow-Agee Laboratories. Williamson was presented by plaintiff as an expert witness. He testified as to the condition of the streets at the time of his investigation. His testimony was to the effect that the streets were in various degrees of deterioration; from the east entrance, for 300 feet or more, the street was almost impassable. A portion of some of the streets appeared to be in fair condition. There was evidence, however, that in many places the surface of the streets was below curb level. The base was humped and the surfacing evidenced breaks and separation of the layers.
Testimony was given that on this type of work the character of the street and its permanency are determined by the character and permanency of the base. Where water undermines and softens the base, the entire street and its surface are said to fail. Williamson found batches of gravel indicating an improper and uneven spreading and an improper, uneven, and bumpy asphalt coating. He related that in May of 1968 both the base and the asphalt surface were in bad condition. The test made by Borrow-Agee Laboratories disclosed, according to the witness’ testimony, an inconsistency in the makeup and moisture content of the base as well as an inconsistency and variation in the makeup of the asphalt surface.
It was contended by some of the defendants, however, that during the construction, a surface spillway was substituted for underground culverts as the culverts were said to have been installed at too great a depth to sufficiently drain. Williamson found no relationship in this change between the original plan of drainage and the deterioration of the street. Neverthe *367 less, he expressed the opinion that the deterioration at the east end of the subdivision was worsened or caused to some extent by ground water, the source of which he did not know. The evidence in this respect showed that there had been fills in this area over natural drainage avenues as well as leakage from water lines and fire hydrants. Water was found standing around a fire hydrant which was part of the water system installed by Winford under another contractor.
Bryant L. Crabtree, president of Win-ford, entered into the contract with Hale in 1967 for surfacing of the streets of the subdivision. He was not present when the surfacing was actually done in September of 1967. He arrived later in the afternoon and found that the base and the subbase were soft and not properly compacted.
Fred McCormick, who actually did the work for Winford, was shown to have called Crabtree before the surfacing treatment was applied and informed him that the base was wet and, in effect, unsuitable for surfacing. Nevertheless, McCormick was told to go ahead and apply the asphalt as Howard desired an early completion of the work. Crabtree expressed the opinion that notwithstanding thus unfavorable condition a good result would eventually be had though the base was wet.
Hale gave testimony that some of the water lines leaked, possibly from breaks occasioned by his equipment, and that water stood on two of the lots. Hale’s testimony that a leak occurred in a water line was supported by the testimony of James Heflin, Hale’s foreman. Lime and ready-mix cement were applied to dry some of the wet, soft areas.
L. T. Brown, an expert with many years’ experience in road construction, examined the subdivision’s streets on June 9, 1970. A view of the streets readily disclosed to him that something was wrong with the base and subbase which, he testified, could be due to a drainage problem or moisture getting into the base and subbase. Pockets or batches of untreated gravel would, he asserted, permit water to descend through the asphalt and damage the base.
Ross Brister, an employee of defendant Hale when work in the subdivision began, testified that certain areas were wet when the subbase was prepared. The ground was described as mushy, with water standing in some areas. A dozer operated by him was stuck in an area where a branch or natural drain once ran. Three water lines were broken during his employment. These, Brister said, provided one of the. sources of water softening the base and subbase of the streets. However, he found no water standing in ditches opened to a depth of some three to eight feet for the installation of sewer lines.
Defendant Sanders, one of the engineers, testified that the finished asphalt surface was not an acceptable job inasmuch as it did not meet grade levels, that it was rough in places and contained ruts and mounds.
From the aforesaid résumé of the testimony contained in 698 pages of the transcript of evidence, we conclude, as did the trial court, that the damages for which plaintiff claims compensation resulted from work improperly done in the construction of the streets. As to the base, subbase, and asphalt surfacing, the fault of the first two is attributable to defendant Hale and the last-named to third-party-defendant, Winford.
It appears appropriate to point out that Hale and Winford Company, Inc., contend the failure of the work was due to causes beyond their control, such as subterranean water, water from breaks in the water system, the character of the land, and to fills over branches or other natural drains. It seems that in certain areas these causes may have been contributing factors in the resulting damages. In other areas, with higher elevations and better drainage not affected by any extraneous means, the same defects appeared. All areas were damaged. Hence the conclusion appears inescapable that the character *368 of work done by Hale and Winford was a substantial factor in producing the damages established in this cause.
 From our review of the evidence as detailed above, a clear conclusion follows that Hale is responsible for the damages resulting from the defective and improper work done, particularly with reference to the bases of the street and the laying of the asphalt surface, not only through his own work but for that caused by his subcontractor, Winford. However, Winford is liable to Hale and is obligated to contribute one-half of the damage done.
Williamson’s testimony is the only evidence of any definite nature as to the extent of damages to which plaintiff is entitled. His estimate was $11,000 for the cost of the necessary repairs to be made to the streets. Evidence as to lesser amounts is predicated upon a basis of partial damages. We find, however, that damages extended to the entirety of the streets.
For the aforesaid reasons, the judgment appealed is affirmed at appellants’ costs.
Affirmed.